## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS SPRINGFIELD DIVISION

| | |
|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 17-3050 |
| MICHAEL FRERICHS in his official capacity as Treasurer of the State of Illinois, ) ) ) ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. Magistrate Judge:

This matter comes before the Court for a Report and Recommendation on the Plaintiff Fidelity & Guaranty Life Insurance Company's (Fidelity, FGL, or FGLIC) Motion for Preliminary Injunction (d/e 9) and Defendant Illinois Treasurer Michael Frerichs's (Treasurer) Motion to Dismiss (d/e 18) (collectively the Motions). Fidelity requests oral argument on the Motions. The parties have thoroughly brief the Motion to Dismiss so oral argument is not required. The request for oral argument on the Motion to Dismiss is denied. For the reasons set forth below, this Court recommends that the Treasurer's Motion to Dismiss should be ALLOWED in part and DENIED in part. Count 1 of Fidelity's Complaint for Declaratory

and Injunctive Relief (d/e 1) (Complaint) of states a claim for violation of Fidelity's right to be free from unreasonable searches and seizure under the Fourth Amendment.[1]  Fidelity's other claims should be dismissed for the reasons set forth below.

The Court will set Fidelity's Motion for Preliminary Injunction for a hearing on Fidelity's Fourth Amendment claim.

<u>STATEMENT OF FACTS</u>

This case concerns unclaimed proceeds to life insurance policies. Fidelity sells life insurance policies throughout the United States.[2] Sometimes owners and beneficiaries of policies do not claim the death benefits and other proceeds from the policies.  Several states, including Illinois, have enacted laws that require life insurance companies to turnover these unclaimed funds (Unclaimed Funds) to the states.  The Illinois Disposition of Unclaimed Property Act (Act) governs unclaimed life insurance proceeds as well as other unclaimed personal property in Illinois. 765 ILCS 1025/0.05 et seq.

The Act requires persons who hold unclaimed property ("holders"), including life insurance companies, to report and turnover the property to

---

[1] Fidelity titles the counts in the Complaint "First Cause of Action," "Second Cause of Action," etc.  The Court uses the titles "Count 1," "Count 2," etc. for brevity.
[2] Fidelity sells life insurance policies in New York through a subsidiary.

the Treasurer.  The Treasurer holds the unclaimed property until the rightful

owner claims it.  The Act requires Fidelity and other life insurance

companies to report and turnover Unclaimed Funds annually.  765 ILCS

1025/11(d).  The Act defines Unclaimed Funds as "all monies due and

owing by any life insurance company unclaimed and unpaid for more than

5 years after the moneys became due and payable."  765 ILCS 1025/3(b).

Policies are presumed to be matured and due and payable even if the

insured's death is not reported to the company under the following

conditions:

> A life insurance policy not matured by actual proof of the death
> of the insured is deemed to be matured and the proceeds
> thereof are deemed to be due and payable if such policy was in
> force when the insured attained the limiting age under the
> mortality table on which the reserve is based, unless the person
> appearing entitled thereto has within the preceding 5 years, (1)
> assigned, readjusted, or paid premiums on the policy, or
> subjected the policy to loan, or (2) corresponded in writing with
> the life insurance corporation concerning the policy.  Moneys
> otherwise payable according to the records of the corporation
> are deemed due and payable although the policy or contract
> has not been surrendered as required.

765 ILCS 1025/3(b).  Insurance companies must turnover Unclaimed

Funds "if the last known address, according to the records of the

corporation, of the person entitled to the funds is within this State." 765

ILCS 1025/3(a).  If the address of the person entitled to the funds is

unknown, "it is presumed that the last known address of the person entitled

to the funds is the same as the last known address of the insured or annuitant according to the records of the corporation." Id.

The Act requires holders to retain records related to presumptively abandoned property for a specific period. The Act requires that, "[P]roperty records for the period required for presumptive abandonment plus 9 years immediately preceding the beginning of that period shall be retained for 5 years after the property was reportable." 765 ILCS 1025/11(h)(2).

The Act authorizes the Treasurer to conduct examinations if the Treasurer has reason to believe a person holds unreported unclaimed property:

> The State may at reasonable times and upon reasonable notice examine the records of any person if the State Treasurer has reason to believe that such person has failed to report property that should have been reported pursuant to this Act.

765 ILCS 1025/23(b). The term "person" in the Act includes business entities such as Fidelity. 765 ILCS 1025/1(g). The state regulations list several possible circumstances that under which the Treasurer shall have "reason to believe" a person has unclaimed property. 74 Ill. Admin. Code § 760.90. Those circumstances include:

> 5) The total unclaimed property remitted by a holder is below the average remittance for other holders in the same industry and that have assets of similar size to the holder.

6) A holder does not report all types of unclaimed assets they may be holding as indicated by but not limited to:

　　A) A previous examination of the holder; or

　　B) A comparison with the asset types reported by other holders in the same industry and that have assets of similar size to the holder.

. . . .

9) An unclaimed property examination of the records of the holder has not been performed for 5 or more calendar years.

74 Ill. Admin. Code §§ 760.90(c)(5), (6), and (9). The list of circumstances in which the Treasurer shall have reason to believe is not exhaustive:

d) Notwithstanding the enumerated conditions listed in subsections (c)(1)-(c)(12) above, the Treasurer may conduct an examination of a holder based on facts within the knowledge of or imparted to the Treasurer by others.

74 Ill. Admin. Code § 760.90(d). The person subject to the examination is liable for the cost of the examination if unclaimed property is found, but this liability cannot exceed the value of unclaimed property found. 765 ILCS 1025/23(c).

The Act does not authorize the Treasurer to issue subpoenas or other compulsory process to conduct an examination. The Act also does not authorize the Treasurer to bring an action directly to enforce compliance with an examination. The Illinois Attorney General, however, may bring an action to enforce the Treasurer's right to conduct an examination. See 15

ILCS 205/4; e.g., Fryzel v. Chicago Title & Trust Co., 173 Ill. App. 3d 788,

527 N.E.2d 1025 (Ill.App. 1st Dist. 1988) (action brought by Attorney

General to force examination of a holder's records under the Act).

The Treasurer may employ third parties to conduct examinations, but

may not pay contingency fees for examinations if the person subject to the

examination is located in Illinois:

> § 24.5 Contingency Fees. The State may not enter into a
> contract with a person to conduct an examination of a holder
> located within the State of Illinois under which the State agrees
> to pay such person a fee based upon a percentage of the
> property recovered for the State of Illinois. Nothing in this
> Section prohibits the Office of the State Treasurer from entering
> into contracts with persons to examine holders located outside
> the State of Illinois under which the Office of the State
> Treasurer agrees to pay such persons based upon a
> percentage of the property recovered for the State of Illinois.

765 ILCS 1025/24.5.  The Treasurer may file suit to require delivery of

unclaimed property under the Act:

> § 24. Enforcement of delivery. If any person refuses to deliver
> property to the State Treasurer as required under this Act, the
> State Treasurer may bring an action in the name of the State in
> the circuit court or any federal court to enforce delivery.

765 ILCS 1025/24.

The Treasurer may administratively assess interest charges against a

holder of unclaimed property, including insurance companies such as

Fidelity, if the holder "remits unclaimed property that is past due or fails to

remit unclaimed property pursuant to an examination by the State." 765

ILCS 1025/25.5(c). The Treasurer may administratively assess charges

and fees if holders of unclaimed property file reports late or do not diligently

attempt to find the actual owner of property before turning over the

property. 765 ILCS 1025/25.5(a) and (b).

In addition, a person who does not comply with certain provisions of

the Act may be subject to fines and imprisonment:

> § 25. (a) Any person who fails to render any report or perform
> other duties required under this Act, is guilty of a business
> offense and fined not more than $500. Each day such report is
> withheld or the duties are not performed constitutes a separate
> offense.

> (b) Any person who willfully refuses to pay or deliver
> abandoned property to the State Treasurer as required under
> this Act shall be guilty of a Class B misdemeanor. Each day the
> violation continues is a separate offense.

765 ILCS 1025/25. A business offense is "a petty offense for which the fine

is in excess of $1,000." 730 ILCS 5/5-1-2. A Class B misdemeanor is

punishable by a prison sentence not to exceed six months, a fine not to

exceed $1,500.00, or both. 730 ILCS 5/5-4.5-60.

The Treasurer must commence an examination of a person who filed

an annual report within five years of the date the report was filed. If the

Treasurer fails to do so within the five-year time limit, "the Office of the

State Treasurer may not thereafter issue a Notice of Deficiency, otherwise

assert a deficiency, or seek any other charge or remedy under this Act with respect to that report."  765 ILCS 1025/23.5(a).

On October 4, 2012, the former Illinois Treasurer Dan Rutherford (Treasurer Rutherford) began an examination (Audit) of Fidelity under § 1025/11 of the Act.  Treasurer Rutherford sent a letter to Fidelity stating that Treasurer Rutherford was commencing the Audit of Fidelity's records "for the purpose of determining compliance with the Act."  <u>Complaint for Declaratory and Injunctive Relief (Complaint) (d/e 1)</u>, Exhibit A, <u>Letter dated October 4, 2012</u>.  The letter stated, in part,

> The examination will be conducted by Kelmar Associates, LLC and its representatives, as our authorized agent.  Kelmar Associates, LLC has been directed to analyze your records for unclaimed funds in order to determine the portion rightfully owing to the State.  You will be contacted by a representative of Kelmar Associates, LLC, who will schedule a date to begin the review of your records and advise you of the records and personnel that needs to be made accessible for the examination.
>
> The Office of the Illinois State Treasurer reserves the right to impose interest, penalties and examination costs permitted under the Act or otherwise.  Your cooperation with Kelmar and Associates, LLC will bear heavily on your decision in this effort.

<u>October 4, 2012 Letter</u>.

Treasurer Rutherford agreed to pay Kelmar Associates, LLC (Kelmar) a percentage of the unclaimed property collected by Illinois as a result of the Audit.  Fidelity is located in Iowa and Maryland so the contingency fee

arrangement was permitted by § 1025/24.5 of the Act.  Kelmar conducted

the Audit as part of a multi-state audit performed for several states,

including Illinois.  <u>See</u> <u>Complaint</u> ¶¶ 16, 25, 26.

Fidelity alleges that it attempted to negotiate a confidentiality

agreement with Kelmar to maintain the confidentiality of personal

information about insureds and beneficiaries.  Fidelity sent a letter to

Treasurer Rutherford's representative stating that the negotiations were not

successful.   Fidelity alleges that Kelmar took the position that any

confidentiality agreement would be a private agreement between Fidelity

and Kelmar and would not involve the Treasurer.  Fidelity asked Treasurer

Rutherford for the following:

> In order to move forward, we would appreciate getting
> confirmation from you that we are to disclose and deliver our
> records to Kelmar.  Most of the authorization letters we
> received from participating states indicate the company should
> cooperate with Kelmar.   We want to confirm this means that
> each participating state - yours included - is ordering us to
> release records or copies of our records into the custody of
> Kelmar for its review and analysis for purposes of this
> examination including consumer records that may be subject to
> various federal and state privacy laws.

<u>Complaint</u>, Exhibit B, <u>Letter to Treasurer Rutherford dated May 17, 2013</u>.

Fidelity alleges that in 2013, Fidelity and Treasurer Rutherford agreed

to an internal review by Fidelity in lieu of the Audit.  Fidelity agreed to

compare its policies to the Social Security Administration's Death Master

File (DMF) and accelerate payment of any insurance policy benefits discovered through the review to be due under the Act. <u>Complaint</u> ¶ 19. The DMF is a master list of all deaths reported to the Social Security Administration. Fidelity alleges the payments were accelerated because under the Act, Fidelity could wait until the death of the insured was reported to Fidelity or until the "insured attained the limiting age under the mortality table on which the reserve is based" before deeming polices to be mature and due and payable. See §1025/3(b). Fidelity alleges that paid Illinois a total of $786,866.31 in accelerated payments pursuant to this agreement. <u>Complaint</u> ¶¶ 20-23.

In 2013, Fidelity sued the state of California to enjoin California from participating in the Audit. Fidelity raised many (but not all) of the same claims raised here. The District Court dismissed most of Fidelity's claims and denied the request for a preliminary injunction. <u>Fidelity & Guaranty Life Ins. Co. v. Chiang</u>, 2014 WL 6090559 (E.D. Ca. December 12, 2014). The matter, however, is stayed pending appeal. <u>Fidelity & Guaranty Life Ins. Co. v. Chiang</u>, 9th Cir. Ct. App. Case No. 14-17436, <u>Order entered March 3, 2017 (docket no. 18)</u>.

In the meantime, Kelmar attempted to continue the Audit of Fidelity, "ostensibly on behalf of other states." <u>Complaint</u> ¶ 25. Kelmar sent Fidelity

letters dated August 14, 2013 and August 4, 2014 (collectively the Kelmar

Letters).  Kelmar instructed Fidelity to "provide a complete download of all

individual and group life insurance policies and annuity contracts that are

currently in-force OR have been in-force at any time during the period from

January 1, 1986 to December 31, 2013."  Complaint, Exhibit G, August 4,

2014 Letter, at 1.  This letter included a footnote stating that the timeframe

of the Audit would be extended back to 1981 if the Audit was not completed

by June 30, 2015:

> The examination period for Delaware will be 1986 through
> present contingent on the examination being completed by
> June 30, 2015.  If the examination is completed after June 30,
> 2015, the scope will be 1981 through present.  While Kelmar is
> requesting complete records back to 1986, each of the
> participating states' examination findings will only include
> unreported unclaimed property for the years permitted in
> accordance with the respective statutes or, alternatively, in
> accordance with any negotiated settlement agreement.

August 4, 2014 Letter, at 2 n.1.  Fidelity did not produce any records in

response to the Kelmar Letters.

On February 7, 2017, the Treasurer sent a letter to Fidelity.

Complaint, Exhibit H, February 7, 2017 Letter.  The letter stated that the

Audit had been on hold due to the litigation in California.  The letter stated

that the Treasurer was resuming the Audit.  The letter recited that Kelmar

had sent the Kelmar Letters requesting records for the examination and

stated that Fidelity did not comply. The Treasurer referred to the two letters as LI-DR1 (Life Insurance Document Request 1) and LI-DR2 (Life Insurance Document Request 2).

The February 7, 2017 letter noted that the Illinois legislature enacted the Unclaimed Life Insurance Benefits Act. Illinois Public Act 099-0893. This new law will require life insurance companies to compare accounts with the DMF at least semi-annually. Insurers must complete the initial comparison with the DMF on or before December 31, 2017. Illinois Public Act 0099-0893 § 15(a).[3]

The February 7, 2017 letter stated the following demand (Demand) on Fidelity:

> The Treasurer hereby demands that FGL attend an opening conference no later than March 10, 2017 for the unclaimed property examination being conducted by Illinois as part of the multi-state examination. The opening conference shall take place at a location, date and time that is mutually agreeable to FGL and Kelmar but no later than March 10, 2017. FGL should contact . . . Kelmar . . . within 10 business days of the date of this letter in order to begin discussion on scheduling the opening conference, as well as LI-DR1 and LI-DR2 document production.

February 7, 2017 Letter, at 2. The letter concluded with the following:

> This letter serves as a final notice and demand that FGL allow the examination to take place and produce the requested data.

---

[3]Illinois also enacted the Revised Uniform Unclaimed Property Act, Illinois Public Act 100-0022, art. 15. This law will become effective on January 1, 2018 and will supersede the Act. Id., § 99-999.

If FGL does not produce the requested data by February 28, 2017, the Treasurer will take necessary legal steps to compel production.

Id., at 3.

On February 25, 2017, Fidelity commenced this action. Fidelity asks for declaratory relief that:

(1) The Audit violates the Fourth Amendment as an unreasonable search and seizure (Count 1);

(2) The Audit violates Fidelity's right to substantive due process because the Treasurer is acting arbitrarily, irrationally, and without legitimate governmental purpose (Count 2);

(3) The Audit violates Fidelity's right to procedural due process because the Treasurer was breaching the agreement made by Treasurer Rutherford (Count 3);

(4) The Audit violates Fidelity's right to procedural due process because Kelmar has a pecuniary interest in the outcome of the Audit because it will be paid a contingency fee based of a percentage of the Unclaimed Funds collected as a result of the Audit (Count 4);

(5) The Act unconstitutionally discriminates against companies outside of Illinois in violation of the Commerce Clause (Count 5);

(6) The Audit burdens interstate commerce in violation of the

Commerce Clause (Count 6);

(7) The scope of the Audit is beyond the statutory authority of the

Treasurer under the Act (Count 7);

(8) The Treasurer breached the 2013 Agreement (Count 8); and

(9) The Treasurer is estopped from reinstituting the Audit after Fidelity

performed on the 2013 Agreement (Count 9).

Fidelity also seeks to enjoin the Treasurer from proceeding with the Audit

(Count 10).  Count 10 does not allege an independent claim for relief.

The parties then filed the Motions.

## ANALYSIS

## MOTION TO DISMISS

The Treasurer moves to dismiss under Federal Rule of Civil

Procedure 12(b)(1) of the grounds of lack of standing; lack of  ripeness;

and sovereign immunity under the Eleventh Amendment with respect to

Counts 7, 8 and 9.  The Treasurer also moves to dismiss the Complaint

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Court addresses the Rule 12(b)(1) claims first.  The Court must

determine whether it has jurisdiction before addressing the merits of

Fidelity's claims.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95-102 (1998).

I.      Rule 12(b)(1)

    A.      Standing and Ripeness

The Treasurer claims that Fidelity fails to allege sufficient facts to establish standing and ripeness.  The Constitution only authorizes federal courts to hear "cases" and "controversies."  U.S. Const. art. III, § 2.  A matter is a case or controversy for constitutional purposes only if the plaintiff has standing and the matter is ripe for adjudication.  Standing and ripeness are both necessary to invoke this Court's subject matter jurisdiction.  National Park Hospitality Association v. Department of the Interior, 538 U.S. 803, 808 (2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).

The Treasurer makes a facial challenge to subject matter jurisdiction because he claims that Fidelity fails to allege facts that establish standing and ripeness.  Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015).  In evaluating facial challenges to subject matter jurisdiction, the Court must accept as true all material factual allegations and construe the complaint favorably to Fidelity.  Warth v. Seldin, 422 U.S. 490, 501 (2007); Silha, 807

F.3d at 173.  Fidelity must allege sufficient facts to establish standing and ripeness "in the same way as any other matter on which the plaintiff bears the burden of proof."  Lujan, at 561.

The standard for evaluating facial challenges to jurisdiction at the pleading stage is the same as the standard for a motion to dismiss for failure to state a claim.  Silha, 807 F.3d at 173.  Fidelity's Complaint "must contain sufficient factual matter, accepted as true, to state a claim" that it has standing and its claims are ripe "that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   The Supreme Court explained, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Twombly, 550 U.S. at 570.  The Court may also consider matters of public record in determining whether Fidelity's allegations are sufficient under the Twombly/Iqbal standard.  See Parungao v. Community Health Systems, Inc., 858 F.3d 452, 457 (7th Cir. 2017).

1.    Standing

To establish standing, Fidelity must allege facts that plausibly demonstrate (1) an "injury in fact," (2) that is "fairly traceable" to the challenged action, and (3) that will likely be "redressed by a favorable

decision" in the action.  <u>Lujan</u>, 504 U.S. at 560-61.  An injury in fact must be "actual or imminent, not conjectural or hypothetical."  <u>Id.</u> at 561 (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)).  Fidelity alleges these elements.  Fidelity alleges the Audit is illegal.  Fidelity alleges that it will incur an injury in fact from the Audit in the form of being subject to an illegal search, being denied procedural due process, and being required to incur significant costs to comply with the Audit.  Fidelity alleges that this injury is imminent because the Treasurer stated that the Demand was his final demand and he would take appropriate steps to enforce compliance with the Audit.  The alleged imminent injury is traceable to forced compliance with the Audit.  Fidelity asks the Court to redress the injury by declaring the Audit illegal and enjoining the Treasurer from continuing the Audit.  Fidelity alleges standing.

The Treasurer argues that Fidelity fails to allege an injury in fact and fails to allege that a favorable decision would be likely redress the claimed injury.  The Treasurer argues that Fidelity has not alleged an imminent injury because the Demand was a request for voluntary compliance.  The Demand did not force Fidelity to incur any costs because the Treasurer cannot directly enforce the Demand.  The Illinois Attorney General must file

an action and prevail before Fidelity will be required to incur any costs of compliance.

The Court disagrees.  The Treasurer stated in the February 2017 letter that the Demand was a "final notice and demand" and the Treasurer would take "legal steps" to enforce the Demand.  That statement when read favorably to Fidelity poses an immediate threat that the Demand will be enforced.  The Demand has effectively put Fidelity in the position of a party subject to an administrative subpoena.  That Demand for is enforceable in court by the Illinois Attorney General.  See Big Ridge, Inc., v. Federal Mine Safety and Health Review Commission, 715 F.3d 631, 645-46 (7th Cir. 2013) (Administrative demand for information enforceable by court action is treated as an administrative subpoena).  When read favorably to Fidelity, the Complaint alleges that the Treasurer's threatened enforcement of the Demand poses an imminent threat of a concrete and particularized injury.

Fidelity is not obligated to wait until the Treasurer and the Attorney General sue.  If an alleged wrongful governmental action that will cause an injury in fact is imminent, a party has stated sufficient facts to establish an injury in fact. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 (2007).  Fidelity has sufficiently alleged an imminent injury.

The alleged imminent violation of Fidelity's Fourth Amendment rights constitutes an injury in fact.  See  Spokeo, Inc. v. Robins, __ U.S.__, 136 S.Ct. 1540, 1549 (2016) (injury in fact includes intangible injuries to certain constitutionally protected individual rights); Siebert v. Severino, 256 F3d 648, 655 (7th Cir. 2003) (a person subject to an illegal search or seizure may recover presumed damages without proof of actual damages).  The alleged imminent violation of Fidelity's rights to procedural due process also constitutes an injury in fact.  See Spokeo, 136 S.Ct. at 1549; Carey v. Piphus, 435 U.S. 247, 266 (1978); see also (A person may proceed with a claim for violation of right to procedural due process without proof of injury).

The alleged cost that Fidelity will incur in complying with the Audit is also a concrete and particularized injury in fact.  The Treasurer's Demand requires Fidelity to produce the documents requested by Kelmar Letters. Those Kelmar Letters ask for nationwide records on all life insurance policies going back to 1981.  The cost of producing all of those records alone will be significant.  Incurring such monetary costs constitute an injury in fact.  See Remijas v. Neiman Marcus Group, LLC, 794 F.3d 688, 694 (7th Cir. 2015) (Monetary costs incurred that are more than *de minimus* are sufficient to establish an injury in fact).  Fidelity has alleged an injury in fact at the pleading stage.

The Treasurer also argues that the requested relief will not redress the injury. Fidelity seeks to enjoin the Treasurer from conducting the Audit. The Treasurer argues that the Audit is a multi-state examination of Fidelity conducted by Kelmar. The Treasurer also argues that the Audit will continue even if the Court awards the requested relief. The requested relief, therefore, will not redress the alleged injury because Fidelity will still incur the alleged injuries caused by the Audit.

This is a closer question. The other states participating the Audit are not parties and will not be bound by this Court's decision. The redress sought will not stop the other states from pursuing the Audit. The Audit, however, started in 2012 and stopped when Fidelity sued California in 2013. Fidelity has not complied with Kelmar's document requests and has not incurred compliance costs for at least four years. The Treasurer resumed the Audit only after Fidelity lost its request for a preliminary injunction to stop the Audit in California. When read favorably to Fidelity, these allegations indicate that an injunction against the Treasurer could again postpone the Audit, perhaps indefinitely. Likewise, when read favorably to Fidelity, the allegations show that this Court could redress the alleged injury by issuing an injunction. Fidelity has alleged sufficient facts to establish standing.

The Court notes that Fidelity also alleges that it will suffer injury in fact from the disclosure of confidential customer information and from the risk of fines and penalties. These alleged risks are too remote and speculative to constitute injuries in fact. See Clapper v. Amnesty International USA, 568 U.S. 398, 409 (2013); Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (speculative risk of future injury is not an injury in fact). Fidelity does not allege an injury by providing the information to Kelmar for purposes of the Audit. Fidelity alleges an injury if Kelmar loses control of the information or discloses confidential information to third parties under circumstances that will compromise the confidentiality of the information. Fidelity alleges no facts to show that any of these eventualities are likely to occur.

Fidelity filed supplemental documents that indicate that Kelmar has been subject to request for production of documents for all audits of life insurance companies performed for the California State Controller. Plaintiff's Motion for Leave to File Supplemental Documents (d/e 28), attached Letter dated June 28, 2017 and Opposition to Motion to Compel. Fidelity argues that the prospect of an order compelling production of audit documents from other insurance companies shows a substantial risk that its documents will be improperly disclosed if it is required to produce

documents to Kelmar.  The Court disagrees.  The situation would be no different from a third party served a subpoena on Fidelity directly.  In either case, Fidelity could protect the confidentiality of the documents by challenging the request for production and by asking the court to provide protections from improper disclosure of confidential information if the documents are ordered to be produced.  <u>See</u> Fed. R. Civ. P. 24, 26, 45(d)(3).  The risk of improper disclosure under the facts alleged are speculative and do not demonstrate an injury in fact.

Fidelity also alleges that it will suffer harm because it will be subject to penalties and fines due to the Treasurer's Demand for compliance with the Audit.  The chance of fines or penalties is remote at best.  The Treasurer only has authority to impose fines or penalties for failure to file reports, failure to diligently search for rightful owners, or failure to turnover unclaimed property in a timely manner.  765 ILCS 1025/25.5(a)-(c).  Fidelity nowhere alleges that it failed to file timely reports, failed to search for rightful owners, or failed to turnover unclaimed property on time.  The facts show no prospect that the Treasurer could administratively impose a fine or penalty.

The risk of criminal fines or penalties is extremely remote.  Fidelity would be at risk of committing a misdemeanor only by willfully refusing to

turnover unclaimed property to the Treasurer. 765 ILCS 1025/25(b). Fidelity again alleges no failure to turnover unclaimed property. Failure to comply with the Demand poses no risk of misdemeanor liability.

Fidelity could commit a business offense if it failed to render a report or perform a duty under the Act. 765 ILCS 1025/25(a). The Act authorizes the Treasurer to conduct examinations to find unclaimed property, but the Act does not set forth a duty to comply with a Treasurer's demand for information in any such examination. Fidelity would only have a duty to comply with the Treasurer's examination if Illinois Attorney General filed an action and secured a final, non-appealable order requiring Fidelity to comply. Fidelity would be subject to prosecution for a business offense only if it then refused to comply. Such a possibility is too remote and speculative to constitute an injury in fact. See Clapper, 568 U.S. at 409.

The alleged illegal search in violation of the Fourth Amendment, alleged procedural due process violations, and the alleged cost of compliance with the Audit, however, are concrete, particularized and imminent injuries in fact that the Court could redress. Fidelity has alleged standing based on these factors.

    2.   <u>Ripeness</u>

Fidelity must also allege facts to establish that the claims is ripe.

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

National Park Hospitality Association v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (quoting Abbott Laboratories, 387 U.S. at 148-49).  The ripeness of an action depends on (1) the fitness of the issues for judicial determination and (2) the hardship to the parties of withholding court consideration.  Abbott Labs, 387 U.S. at 149; Rock Energy Co-op v. Village of Rockton, 614 F.3d 745, 749 (7th Cir. 2010).

Fidelity has alleged that its Fourth Amendment and procedural due process claims are ripe.  The issues are fit for judicial determination. Fidelity alleges that the Audit process itself with violate these constitutional rights.  Fidelity has further alleges sufficient facts to render the issues fit for judicial determination.  Again, Fidelity does not need to show any other injury beyond the violation of its rights to be entitled to redress for these violations.  See Spokeo, 136 S.Ct. at 1549; Carey, 435 U.S. at 266; Siebert, 256 F3d at 655.  Fidelity, therefore, will suffer an immediate hardship if the Audit proceeds in violation of its rights.  See Plains All

American Pipeline L.P. v. Cook, __F.3d__, 2017 WL 3403129, at *8 (3$^d$ Cir. 2017). These claims are ripe.

The ripeness of remaining substantive due process and Commerce Clause claims in Counts 2, 5, and 6 is lacking. The only alleged injury is the cost of complying with the Audit. Third Circuit has held that the cost of complying with an administrative audit is generally not a sufficient hardship to render a claim ripe for adjudication unless claim asserts a Constitutional right that this Court will vindicate without proof of actual injury. Plains All American, 2017 WL 3403129, at *7-*8; University of Medicine and Dentistry of New Jersey v. Corrigan, 347 F.3d 57, 70 (3$^d$ Cir. 2003). The hardship caused by the cost of compliance alone would only render such a claim ripe if the costs were so great that compliance would have an immediate impact on the day-to-day operations of the party challenging the audit. Plains All American, 2017 WL 3403129, at *7; Corrigan, 347 F.3d at 70. The Third Circuit explained that an audit is a preliminary investigative step that may or may not lead to an enforcement action. In such situations, adjudication may be premature because the audit may show no problem and result in no administrative action. Corrigan at 70 ("[An audit] is a decision only to investigate, which is by its nature a preliminary one. It is the initiation of a process designed to make a determination . . . .").

Further, the completed audit would provide a more complete factual basis to evaluate the plaintiff's claims.  See National Parks Hospitality Association, 538 U.S. at 808.

The Court agrees with this analysis.  The completed Audit would provide a much better basis on which to judge whether the process violated Fidelity's substantive due process rights or burdened interstate commerce. In Temple-Inland, Inc. v. Cook, 192 F.Supp.3d 527, 540-41 (D.Del. 2016), for example, the court found a substantive due process violation in an unclaimed property audit by the state of Delaware after the audit was completed.  The completed audit report provided a detailed factual basis on which the District Court could evaluate the impact of the audit on the plaintiff's substantive due process rights.  Id.  A more complete factual record would similarly provide a better basis to determine the impact of the Audit on interstate commerce and Fidelity's substantive due process rights. Fidelity further does not allege that incurring the cost of compliance would be so great as to affect its ability to conduct day-to-day operations.  In light of these considerations, the Court finds that the claims in Counts 2, 5, and 6, therefore, are not ripe at this time.[4]

---

[4] The court in the Chiang case also initially dismissed all of Fidelity's claims as not ripe.  The claims became ripe only after the California State Controller brought an action to force Fidelity to comply with the Audit.  Chiang, 2014 WL 6090559, at *1.

3.   Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution generally makes a State immune from suit in federal court.  See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 669-70 (1999).  A citizen may only bring an action against a state in federal court if Congress constitutionally abrogates the state's immunity for the particular action, the state waives immunity for the particular action, or the citizen seeks a limited range of prospective injunctive relief for violations of federal law or the Constitution.  Id.; Green v. Mansour, 474 U.S. 64, 69-72 (1985).[5] Eleventh Amendment immunity is jurisdictional.  Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 97-101 (1984).

In this case, Counts 7-9 are barred by Eleventh Amendment immunity.   Counts 7, 8, and 9 do not allege any violations of federal law or the Constitution.  Count 7 asks the Court to enjoin the Treasurer to follow Illinois law.  The Eleventh Amendment bars a federal court from ordering a state official to comply with state law.  Pennhurst, 465 U.S., at 121.  Counts 8 alleges a breach of contract and Count 9 asks the Court to enjoin the Audit under Illinois law of estoppel.  None of these actions seek prospective

---

[5] The Eleventh Amendment does not bar counts 1 through 6 because Fidelity seeks prospective injunctive relief to stop alleged constitutional violations.

injunctive relief to bar violations of federal law or the Constitution. The State of Illinois has not waived immunity for any of these actions. Congress has not abrogated Eleventh Amendment immunity in any of these claims. The Eleventh Amendment bars these Counts.

Fidelity argues that Illinois waived its Eleventh Amendment immunity because § 1025/24 authorizes the Treasurer to bring an action in federal court to force the turnover of unclaimed property. The Court disagrees. Section 1025/24 does not apply to this case. Section 1025/24 only relates to actions to compel the turnover of unclaimed property. This case does not concern turnover of unclaimed property. This case concerns compliance with the Treasurer's Audit. Section 1025/24 does not authorize the Treasurer to file a suit in federal court to enforce the Audit. The Illinois Attorney General must bring an action to enforce the Treasurer's right to conduct an examination. The Illinois Attorney General's authority to bring such an action comes from 15 ILCS 205/4, not § 1025/24. Section 1025/24 does not apply to this situation.

Moreover, Section 1025/24 does not waive Eleventh Amendment immunity generally. Fidelity argues § 1025.24 waives the state's immunity because the section allows the Treasurer to bring an action in federal court. Fidelity argues that § 1025/24 must be read to allow it to bring an action in

federal court also because it would be unfair to let the Treasurer decide to go to federal court, but not let the Fidelity elect to do so.  Fidelity is incorrect.  The Eleventh Amendment gives that states a one-sided advantage to elect to appear in federal court.  A state's Eleventh Amendment immunity "is 'a personal privilege which [the state] may waive at pleasure.'"  College Savings Bank, 527 U.S. at 675 (quoting Clark v. Barnard, 108 U.S. 436, 447 (1883)).  A waiver of this "personal privilege" of immunity must be express and unequivocal.  Pennhurst, 465 U.S. at 99.  The statutory possibility of an action in federal court is not a generally sufficient to constitute a waiver.  See Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 578-79 (1946) (statutory phrase authorizing suit in "any court of competent jurisdiction" not sufficient to waive immunity); see also College Savings Bank v. Florida Prepaid Postsecondary Education Board, 527 U.S. 666, 676 (1999).  Section 1025/24 only gives the Treasurer the option to waive the Illinois's privilege of Eleventh Amendment immunity and file a case in federal court.  If the Treasurer elected to file suit in federal court under § 1025/24, immunity would be waived for that case, but not until then.  See Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 619 (2002).  That has not happened.  The Eleventh Amendment bars counts 7, 8, and 9.

This Court, therefore, has jurisdiction to hear Fidelity's Fourth Amendment claim and its procedural due process claims in Counts 1, 3, and 4. All other claims should be dismissed without prejudice for lack of jurisdiction.

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The Treasurer moves to dismiss all of Fidelity's claims for failure to state a claim. The District Court should only consider whether Counts 1, 3, and 4 state a claim. To state a claim, again, each Count "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678.

### A. Count 1 Fourth Amendment

As discussed above, Fidelity alleges that the Demand violates its right to be free from an unreasonable search and seizure under the Fourth Amendment. For purposes of the Fourth Amendment, the Demand is equivalent to an administrative subpoena. An administrative subpoena meets constitutional standards under the Fourth Amendment if the demand is "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." Big Ridge, 715 F.3d at 646 (quoting See v. City of Seattle, 387 U.S. 541, 544 (1967). The Demand requires Fidelity to produce the documents requested by Kelmar

Letters.  The Kelmar Letters request all records of all life insurance policies and annuity contracts from across the country dating back to 1981.  This document demand is specific and is relevant to the purpose of the Treasurer to examine whether Fidelity has additional unclaimed property.

A finder of fact could plausibly conclude, however, that the request is not sufficiently limited in scope.  Fidelity must only turnover property to the Treasurer if Fidelity's records show that the insured or person entitled to receive the funds lives in Illinois.  765 ILCS 1025/3(a).  A finder of fact could conclude plausibly conclude that a request for all insurance policies from across the country regardless of whether Fidelity's records show any connection to Illinois was not properly limited in scope.

A finder of fact could also conclude that a request for 31 years of records was not properly limited in scope.[6]  The Treasurer must commence an examination within five years of the date that Fidelity filed a particular annual report.  §1025/23.5(a).  A holder of property also is only required to retain nine years of records for five years after property became reportable.

---

[6] Fidelity asserts that the Treasurer seeks records for the past 36 years dating back to 1981.  Fidelity bases this assertion on a footnote in Exhibit G to the Complaint, quoted above, in which Kelmar requested records back to 1981 for the Delaware portion of the multi-state Audit.  Fidelity's assertion is correct if the Treasurer seeks to enforce Kelmar's request for the documents back to 1981 for the Delaware portion of the Audit.

§1026/11(h)(2).  Requiring Fidelity to produce records for 31 years may not be sufficiently limited in scope under the Fourth Amendment.

The Treasurer argues that the scope of the Demand is reasonable because the Audit is part of a multi-state audit conducted by Kelmar. Whether the multi-state nature of the Audit renders the requests reasonable is a factual question that would not require dismissal at this stage of the proceedings.

Fidelity also alleges that the Treasurer has not set forth the basis for its reason to believe Fidelity might be holding unclaimed property.  The Treasurer's responded by citing subsection of 74 Illinois Administrative Code § 760.90 setting forth situations in which the Treasurer may have reason to believe.  The Complaint, however, does not allege facts that show that any of the subsections apply in this case.  The Treasurer's reason to believe, therefore, is also a factual question.  At this stage in the proceeding, Fidelity states a claim in Count 1.

     B.    <u>Count 3 Procedural Due Process Breach of Contract</u>

To allege a due process claim, Fidelity must allege that the Treasurer deprived Fidelity of a constitutionally protected liberty or property interest without due process of law. <u>E.g.</u>, <u>Hinkle v. White</u>, 793 F.3d 764, 767 (7th Cir. 2015).  Fidelity alleges it has a liberty or property interest in operating

its business. Fidelity alleges that the Treasurer is depriving it of its

protected liberty or property interest by breaching the agreement Treasurer

Rutherford made to accept Fidelity's internal review and accelerated

payments in lieu of proceeding with the Audit. Fidelity also alleges this

deprivation would be reduced by appropriate procedural safeguards.

Complaint, ¶¶ 52-54.

These allegations fail to state a claim for violation of due process. A

breach of contract does not state a claim for violation of due process:

> For we have said: "the Constitution does not require states to
> keep all promises made in their contracts and regulations.... [A]
> unit of state or local government does not violate the federal
> Constitution just because it violates a state or local law,
> including the law of contracts," *Garcia,* 279 F.3d at 535 (internal
> citations omitted); "[i]t has long been settled that a mere breach
> of contract by the government does not give rise to a
> constitutional claim," *Sudeikis,* 774 F.2d at 770; "[i]f a state's
> violation of its own laws and regulations does not violate the
> due process clause, it is hard to see how failure to keep a
> promise contained in a contract can violate the due process
> clause," *Mid–Am. Waste,* 49 F.3d at 290; and, "the purely
> commercial interest of which the plaintiff was deprived [a
> contract to purchase 142 acres] doesn't seem to be the kind of
> contractual interest that the values that inform the concept of
> due process require to be classified as property," *Ind. Land Co.
> v. City of Greenwood,* 378 F.3d 705, 709–10 (7th Cir.2004).

Taake v. County of Monroe, 530 F.3d 538, 541 (7th Cir. 2008) (quoting

Indiana Land Co., LLC, v. City of Greenwood, 378 F.3d 705, 709-10 (7th

Cir. 2004); Garcia v. Kankakee County Housing Authority, 279 F.3d 532,

535 (7th Cir. 2002); <u>Mid-American Waste Systems, Inc. v. City of Gary, Ind.</u>, 49, F.3d 286, 290 (7th Cir. 1995); <u>Sudeikis v. Chicago Transit Authority</u>, 774 F.2d 766, 770 (7th Cir. 1985).  Because the alleged breach of contract does not violate due process, no additional procedures are needed to protect Fidelity's procedural due process rights.  Count 3 fails to state a claim.

      C.    <u>Count 4 Procedural Due Process Financially Interested Auditor</u>

Fidelity alleges that the Treasurer violated its right to due process by hiring its outside auditor Kelmar on a contingency basis.  Fidelity alleges that hiring an auditor with a direct pecuniary interest in the outcome of an audit violates due process.  Fidelity fails to state a claim.  Fidelity cites no authority to support the proposition that an outside auditor cannot work on contingency in a manner consistent with the principles of due process.

Fidelity alleges in a conclusory fashion that Kelmar is acting in a judicial or quasi-judicial capacity and so its pecuniary interest in the outcome of the Audit violates due process.  <u>See</u> <u>Hagar v. Reclamation Dist. No. 108</u>, 111 U.S. 701, 710 n.2 ("That the duties of assessors in estimating the value of property for purposes of general taxation are judicial."); <u>Brinkerhoff v. Burmfield</u>, 94 F.422, 425 (N.D. Ohio 1899) (It is improper for tax auditor with pecuniary interest in outcome of the audit  to exercise quasi-judicial functions).  <u>Cf</u>. <u>Heyde v. Pittenger</u>, 633 F.3d 512, 517-18 (7th

Cir. 2011) (County Board of Review acts in a quasi-judicial capacity in reviewing tax assessments).

Fidelity fails to allege facts that would plausibly show that Kelmar is acting in a judicial or quasi-judicial capacity. A person in a judicial or quasi-judicial capacity either adjudicates matters or is intimately associated with the judicial process. See Reese v. May, 955 F.Supp. 869, 876-77 (N.D. Ill. 1996); Chiang, 2014 WL 6090559 at *8. Kelmar does not adjudicate matters in this case and is not intimately involved in a judicial process. Kelmar plans to audit Fidelity and issue a report of findings to the Treasurer. Such functions are investigative and not quasi-judicial. The Treasurer reviews such audit reports and decides whether to assert a claim for property that the Treasurer concludes is unclaimed. The Treasurer and Kelmar are performing administrative functions at this point. See Hampton v. City of Chicago, Cook County, Ill., 484 F.2d 602, 608 (7th Cir. 1973) (administrative and investigative functions are not quasi-judicial); Reese v. May, 955 F.Supp. at 876-77 (same). The Treasurer would only participate in the judicial process when it filed an action to turnover unclaimed property under §1025/24. At this point, the current examination process is investigative and not quasi-judicial. Kelmar is not acting in either a judicial or quasi-judicial capacity. See Chiang, 2014 WL 6090559, at *8.

Fidelity argues that Kelmar is in a position comparable to a tax assessor. That is incorrect. An assessor decides the value of property and the amount of tax due. See generally e.g., 35 ILCS 200/9-90 through 200/9-255. That assessment is binding unless the taxpayer can successfully appeal the determination through the appropriate appeals process. See generally e.g., 35 ILCS 200/16-5 through 200/16-205. The Complaint does not allege that Kelmar assess values of unclaimed property for Illinois. Kelmar will investigate and collect information during the Audit. Those functions are not judicial or quasi-judicial.

Fidelity cites the case of Temple-Inland, Inc. to support its argument that Kelmar assesses the value of property like a tax assessor. In Temple-Inland, Kelmar conducted an audit for the Delaware Escheator under the Delaware unclaimed property law. The Delaware statute authorized the Escheator to estimate the value of the unclaimed property under certain circumstances. 192 F.Supp.3d at 534 (citing Del. Code Ann. tit. 12, § 1155). Kelmar estimated the value of unclaimed property owed in that case on behalf of the Escheator. 192 F.Supp.3d at 541. Fidelity does not allege that the Treasurer or Kelmar have authority under the Act to estimate the value of Unclaimed Funds in Illinois and the Court is not aware of such authority in Illinois. The Temple-Inland Court also did not address

the question of whether Kelmar acted in a quasi-judicial capacity or whether Kelmar's contingent fee arrangement violated due process. 192 F.Supp.3d at 540-53. The <u>Temple-Inland</u> decision does not apply in this case. Count 4 fails to state a claim.

<u>MOTION FOR PRELIMINARY INJUNCTION</u>

Fidelity seeks to enjoin the Audit preliminarily to stop the violation of its Fourth Amendment rights. The Court concludes that a hearing is necessary to address the factual questions related to this Motion. As explained above, the right to relief may turn on factual questions such as the basis for the Treasurer's reason to believe Fidelity has unclaimed property and the reasonableness of the scope of the requests in the Kelmar Letters under the circumstances of this case. The Court concludes that a hearing is necessary to allow the parties the opportunity to present any evidence and additional argument on the Count 1 Fourth Amendment claim for injunctive relief.

<u>CONCLUSION</u>

THEREFORE, this Court recommends that Defendant Illinois Treasurer Michael Frerichs's (Treasurer) Motion to Dismiss (d/e 18) should be ALLOWED in part and DENIED in part. Counts 2, 5, 6, 7, 8, and 9 should be dismissed without prejudice for lack of subject matter jurisdiction.

Counts 3 and 4 should be dismissed for failure to state a claim.  The motion to dismiss Count 1 should be denied.

This Court sets Plaintiff Fidelity & Guaranty Life Insurance Company's Motion for Preliminary Injunction (d/e 9) for hearing on October 20, 2017 at 9:30 a.m. before this Court.  The parties may present evidence and additional argument on the Motion at that time.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   September 1, 2017


_____**s/ Tom Schanzle-Haskins**_____
UNITED STATES MAGISTRATE JUDGE