IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:17-CV-03050 ) |
| MICHAEL W. FRERICHS, in his official capacity as Treasurer of the State of Illinois, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the parties' objections to U.S. Magistrate Judge Tom Schanzle-Haskins' Report and Recommendation (d/e 31). The objections are overruled and the Court ACCEPTS the Report and Recommendation. The Motion to Dismiss (d/e 18) filed by Michael W. Frerichs, in his official capacity as Treasurer of the State of Illinois (the Treasurer), is GRANTED IN PART and DENIED IN PART. Counts 2, 5, 6, 7, 8, and 9 are dismissed without prejudice for lack of subject matter

jurisdiction.  Counts 3 and 4 are dismissed without prejudice for failure to state a claim.  The Treasurer's motion to dismiss Count 1 is DENIED.

## I. INTRODUCTION

The Court adopts the Statement of Facts set forth in the Magistrate Judge's Report and Recommendation.  In sum, the case concerns unclaimed proceeds to life insurance policies.  In 2012, the Treasurer initiated an audit of Plaintiff Fidelity & Guaranty Life Insurance Company (Fidelity) pursuant to the Illinois Disposition of Unclaimed Property Act (the Act), 765 ILCS 1025/0.05 et seq.

The Treasurer hired Kelmar Associates, LLC (Kelmar) to conduct the audit.  The Treasurer agreed to pay Kelmar a percentage of the unclaimed property collected as a result of the audit.  In August 2013 and August 2014, Kelmar sent letters to Fidelity instructing Fidelity to provide documents to Kelmar.

In 2013, Fidelity and the Treasurer agreed to an internal review by Fidelity in lieu of the audit.  Fidelity's internal review resulted in Fidelity paying Illinois a total in $786,866.31 in accelerated payments pursuant to the agreement.

In February 2017, the Treasurer sent a letter to Fidelity noting that Fidelity had not complied with Kelmar's 2013 and 2014 letters requesting documents. The letter stated: "This letter serves as a final notice and demand that [Fidelity] allow the examination to take place and produce the requested data. If [Fidelity] does not produce the requested data by February 28, 2017, the Treasurer will take necessary legal steps to compel production."

On February 25, 2017, Plaintiff filed a Complaint for Declaratory and Injunctive Relief alleging:

> (1) The audit violates the Fourth Amendment as an unreasonable search and seizure (Count 1);
>
> (2) The audit violates Fidelity's right to substantive due process because the Treasurer is acting arbitrarily, irrationally, and without legitimate governmental purpose (Count 2);
>
> (3) The audit violates Fidelity's right to procedural due process because the Treasurer breached the parties agreement for an internal review in lieu of the audit (Count 3);
>
> (4) The audit violates Fidelity's right to procedural due process because Kelmar has a pecuniary interest in the

outcome of the audit because it will be paid a contingency fee based on a percentage of the unclaimed funds collected as a result of the audit (Count 4);

(5) The Act unconstitutionally discriminates against companies outside of Illinois in violation of the Commerce Clause by allowing the Treasurer to hire a third-party auditor on a contingency-fee basis with respect to holders of unclaimed property located outside the State of Illinois but not with respect to holders of unclaimed property located inside the State of Illinois (Count 5);

(6) The Audit burdens interstate commerce in violation of the Commerce Clause (Count 6);

(7) The scope of the audit is beyond the statutory authority of the Treasurer under the Act (Count 7);

(8) The Treasurer breached the 2013 Agreement (Count 8); and

(9) The Treasurer is estopped from reinstituting the audit after Fidelity performed on the 2013 Agreement (Count 9).

Fidelity also seeks to enjoin the Treasurer from proceeding with the audit (Count 10). Count 10 does not allege an independent claim for relief.

The Treasurer moved to dismiss the Complaint on the grounds of lack of standing, lack of ripeness, and sovereign immunity. The Treasurer also moved to dismiss the Complaint for failure to state a claim. This Court referred the motion to dismiss to the Magistrate Judge.

On September 5, 2017, the Magistrate Judge recommended that this Court dismiss Counts 2, 5, 6, 7, 8, and 9 without prejudice for lack of subject matter jurisdiction and dismiss Counts 3 and 4 for failure to state a claim. The Magistrate Judge recommended that the Court deny the Treasurer's motion to dismiss Count 1.

Both parties filed objections to the Report and Recommendation. The Treasurer argues that Count 1 should be dismissed. Fidelity argues that Counts 2, 5 and 6 are ripe and that Counts 3 and 4 state a claim. Fidelity does not object to the recommended dismissal of Counts 7, 8, and 9 without prejudice.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(b)(3), the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court reviews de novo any part of the Report and Recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3).

## III. ANALYSIS

### A. Fidelity Has Standing to Bring the Fourth Amendment Claim in Count 1

The Magistrate Judge recommends that this Court find that Fidelity has standing to bring the Fourth Amendment. The Treasurer objects.

Federal courts are only authorized to hear "cases" and "controversies." U.S. Const. art. III, § 2. "A case or controversy requires a claim that is ripe and a plaintiff who has standing." Ind. Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007) (noting that ripeness is concerned with when a claim is brought, while the focus of standing is on who may bring the action).

To have standing, (1) an individual must have suffered an injury in fact that is both (a) concrete and particularized and (b) actual or imminent; (2) the injury must be fairly traceable to the challenged action; and (3) it must be likely that a favorable decision will redress the injury. Sierra Club v. Franklin Cnty. Power of Ill., LLC, 546 F.3d 918, 925 (7th Cir. 2008).

The Treasurer argues that Fidelity does not have standing to assert the Fourth Amendment claim because Fidelity does not assert a cognizable injury that can be redressed by the Court.

The Court finds that Fidelity has alleged standing. Fidelity alleges that the audit is illegal. Fidelity alleges it will suffer an injury in fact from the audit by being subject to an illegal search. See Siebert v. Severino, 256 F.3d 648, 655 (7th Cir. 2001) ("The law recognizes that law-abiding citizens can sue and recover general (or presumed) damages for a Fourth Amendment violation, even without proof of injury.").

In addition, the alleged injury is imminent because the Treasurer stated his demand was his final demand and he would take appropriate steps to enforce compliance with the audit. The alleged imminent injury is traceable to forced compliance with the

audit. Finally, Fidelity asks the Court to redress the injury by declaring the audit illegal and enjoining the Treasurer from continuing the audit.

The Treasurer argues that the Magistrate Judge's conclusion that Fidelity alleged an actual injury in fact is founded on an incorrect factual premise—that Illinois is seeking to use the audit to require Fidelity to produce life insurance records going back to 1981. The Treasurer asserts that Illinois law limits the Treasurer's request to a period beginning in 1997.

However, the audit demand seeks records going back to at least 1986, if not 1981, with the only limitation being that the <u>findings</u> will only include unreported unclaimed property for the years permitted by each state's statutes:

> The examination period in Delaware will be 1986 through present contingent on the examination being completed by June 30, 2015. If the examination is completed after June 30, 2015, the scope will be 1981 through present. While Kelmar is requesting complete records back to 1986, each of the participating states' examination findings will only include unreported unclaimed property for the years permitted in accordance with the respective statutes or, alternatively, in accordance with any negotiated settlement agreement.

Compl., Ex. G at 2, n.1 (d/e 1-1). Therefore, the Magistrate Judge's factual premise is valid.

The Treasurer also argues that the mere threat to take legal action is not sufficient to establish an imminent injury. However, the Treasurer stated in the February 2017 letter that the demand was a "final notice and demand" and that the Treasurer would take legal steps to enforce the demand. Fidelity is not obligated to wait until the Treasurer and the Attorney General sue. See Medimmune, Inc. v. Genetech, Inc., 549 U.S. 118, 128 (2007) (where the government threatens action, a plaintiff does not need to expose himself to liability before bringing suit to challenge the basis for the threat); see also, e.g., Wis. Cent., Ltd. v. Shannon, 539 F.3d 751, 760 (7th Cir. 2008) (it is no bar to ripeness that the government only threatened enforcement and did not bring a lawsuit).

The Treasurer also argues that the alleged harm is not redressable by this Court because the audit is a multi-state audit and relief in this case will not stop the audit of Fidelity by other states. However, Fidelity is challenging the examination pursued by Illinois. A favorable decision would redress Fidelity's injury

because it would prevent the Illinois Treasurer's unreasonable and unconstitutional demand for unnecessary records. Therefore, the Court finds that Fidelity has alleged it has standing to bring the Fourth Amendment claim.

**B.    Fidelity's Fourth Amendment Claim in Count 1 is Ripe But the Substantive Due Process Claims in Counts 2, 5, and 6 Are Not Ripe**

The Magistrate Judge recommended that this Court find that the Fourth Amendment (Count 1) and procedural due process claims (Counts 3 and 4) are ripe and that the substantive due process and Commerce Clause claims (Counts 2, 5, and 6) are not ripe. The Treasurer argues that Count 1 is not ripe. Fidelity argues that Counts 2, 5, and 6 are ripe.

Requiring that a claim be ripe ensures that the Court decides actual controversies and does not render advisory opinions. Hinrichs v. Whitburn, 975 F.2d 1329, 1333 (7th Cir. 1992). Moreover, the ripeness doctrine is designed "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a

concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)). Whether a pre-enforcement challenge to government action is ripe depends on (1) the fitness of the issue for judicial decision and (2) the hardship on the parties of withholding court consideration. Rock Energy Co-op v. Vill. of Rockton, 614 F.3d 745, 749 (7th Cir. 2010).

Fidelity's Fourth Amendment claim in Count 1 presents a purely legal question, which renders the claim fit for judicial review. See Abbott, 387 U.S. at 149 (purely legal issue was fit for judicial review). Fidelity argues that it will suffer hardship absent judicial review. Fidelity notes that the Seventh Circuit has held that a party need not show an injury beyond the violation of the Fourth Amendment to be entitled to redress for a violation of the Fourth Amendment. See Siebert, 256 F.3d at 655 ("The law recognizes that law-abiding citizens can sue and recover general (or presumed) damages for a Fourth Amendment violation, even without proof of injury."). Because Fidelity does not have to show injury to be entitled to redress and alleges that the audit process itself violates its constitutional rights, Fidelity has shown it will

suffer an immediate hardship if the audit proceeds in violation of its rights. The claim in Count 1 is ripe.

Counts 2, 5, and 6, however, are not ripe. In Count 2, Fidelity alleges that the audit violates Fidelity's substantive due process rights because the Treasurer is acting arbitrarily, irrationally, and without legitimate government purpose. Count 5 alleges that the Act unconstitutionally discriminates against companies outside of Illinois in violation of the Commerce Clause by allowing the Treasurer to hire a third-party auditor on a contingency-fee basis with respect to holders of unclaimed property located outside the State of Illinois. Count 6 alleges that the overbroad and excessively burdensome audit violates the Commerce Clause. These claims involve both legal and factual issues. A completed audit would provide a more complete factual basis for evaluating Fidelity's substantive due process and commerce clause claims. See, e.g., Temple-Inland, Inc. v. Cook, 192 F. Supp. 3d 527, 540-41 (D. Del. 2016) (where the completed audit report provided a detailed factual basis on which the district court could evaluate the impact of the audit on the plaintiff's

substantive due process rights).  Therefore, these claims are not fit for judicial review.

Moreover, the only hardship alleged by Fidelity is the cost of complying with the audit and, unlike the Fourth Amendment, a party alleging a substantive due process or Commerce Clause violation must show injury.  The cost of compliance renders a claim ripe if the costs are so great that compliance would have an immediate impact on the day-to-day operations of the party challenging the audit.  See Plains All Am. Pipeline L.P v. Cook, 866 F.3d 534, 542 (3rd Cir. 2017) (noting that the audit, which investigated past conduct, did not have the direct effect on day-to-day business to support hardship as in cases where the regulations imposed new obligations on the company) (citing Abbott Labs., 387 U.S. 136); Univ. of Medicine & Dentistry of N.J. v. Corrigan, 347 F.3d 57, 70 (3rd Cir. 2003).  Fidelity does not allege that incurring the cost of compliance would be so great as to affect its ability to conduct day-to-day operations.  The claims in Counts 2, 5, and 6 are not ripe

**B.   Count 1 State a Claim for Relief But Counts 3 and 4 Fail to State a Claim**

The Treasurer objects to the Magistrate Judge's recommendation that this Court find that Fidelity stated a claim for relief in Count 1.  Fidelity objects to the Magistrate Judge's recommendation that Counts 3 and 4 be dismissed for failure to state a claim.

Count 1 states a claim under the Fourth Amendment.  An administrative demand for information that is enforceable by court action is treated as an administrative subpoena.  See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n, 715 F.3d 631, 645-46 (7th Cir. 2013) (finding that a demand requiring mine operators to produce documents was an administrative subpoena and not a physical search carried out by government).  An administrative subpoena meets constitutional standards under the Fourth Amendment if the demand is "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."  Id. at 646 (quoting See v. City of Seattle, 387 U.S. 541, 544 (1967)).

Fidelity alleges that the Treasurer's demand is unreasonably burdensome because the demand is not sufficiently limited in scope, relevant in purpose, and specific in directive. Specifically, Fidelity alleges that the Treasurer seeks records going back 31 years and requests documents having no connection to Illinois. In addition, Fidelity alleges that the Treasurer has no reason to believe that Fidelity failed to report property escheatable to the State of Illinois. Therefore, Fidelity has sufficiently alleged a Fourth Amendment claim.

Count 3 alleges that the Treasurer is using the Act to deprive Fidelity of its liberty and property interests without adequate procedural protections. To allege a procedural due process claim, Fidelity must allege that a state actor deprived Fidelity of a constitutionally protected liberty or property interest without due process of law. See Hinkle v. White, 793 F.3d 764, 767 (7th Cir. 2015).

Fidelity alleges a property interest in its business. Fidelity further alleges that the deprivation of its property interest is caused by, "but is not limited to the Treasurer's arbitrary and

capricious actions in contravention of the agreement between [Fidelity] and the Treasurer."

Although Fidelity alleges that the deprivation is not limited to the Treasurer's alleged breach of contract, Fidelity does not plead facts indicating what other actions by the Treasurer or Kelmar, as the Treasurer's agent, violated Fidelity's procedural due process rights. Therefore, this leaves only the claim that the Treasurer essentially breached the parties' agreement that Fidelity would conduct an internal review in lieu of an audit. However, a breach of contract does not state a claim for a violation of due process. See Garcia v. Kankakee Cnty. Hous. Auth., 279 F.3d 532, 535 (7th Cir. 2002) (noting that a unit of state government does not violate the Constitution just because it violates the laws of contracts); Sudeikis v. Chi. Transit Auth., 774 F.2d 766, 770 (7th Cir. 1985) ("It has long been settled that a mere breach of contract by the government does not give rise to a constitutional claim."). Therefore, Count 3 fails to state a claim.

In Count 4, Fidelity alleges a violation of procedural due process resulting from the Treasurer's contingent-fee arrangement

with Kelmar, which gives Kelmar a financial interest in the audit proceedings.

A violation of procedural due process occurs when an officer acting in a judicial or quasi-judicial capacity has a pecuniary interest in the matter under review. See Withrow v. Larkin, 421 U.S. 35, 46 (1975); Alexander v. Wis. Dept. of Health & Family Servs., No. 99-C-1429-C, 2000 WL 34239243, at * 13 (W.D. Wis. May 23, 2000), aff'd 263 F.3d 673 (7th Cir. 2001). A person in a judicial or quasi-judicial capacity either adjudicates matters or is intimately associated with the judicial process. See Reese v. May, 955 F. Supp. 869, 876-77 (N.D. Ill. 1996). Quasi-judicial functions do not include investigative and administrative actions. Id.

Fidelity has not alleged facts that would plausibly show that Kelmar is acting in a judicial or quasi-judicial capacity. Kelmar does not adjudicate matters and is not intimately involved in the judicial process. Kelmar plans to audit Fidelity and issue a report of findings to the Treasurer. Those functions are investigatory.

Fidelity argues that it has plausibly alleged that Kelmar is acting in a quasi-judicial because Kelmar will assess or determine the amount of unclaimed property to be remitted to the State of

Illinois. Fidelity argues that Kelmar's role is analogous to a tax assessor, which courts have found are engaged in judicial or quasi-judicial decision-making.

The Court disagrees. A tax assessor decides the value of property and the amount of tax due. See generally, e.g., 35 ILCS 200/9-90 through 200/9-255 (property tax code—assessment books and general valuation procedures). That assessment is binding unless the taxpayer can successfully appeal the determination through the appropriate appeals process. See generally, e.g., 35 ILCS 200/16-5 through 200/16-205 (property tax code—review of assessment procedures). Fidelity does not allege that Kelmar acts in a quasi-judicial capacity by reviewing documents as part of an unclaimed property examination. Fidelity does not allege that Kelmar assesses the <u>value</u> of the unclaimed property as opposed to determining the amount of unclaimed property that should be remitted to the State. Instead, Kelmar investigates and collects information during the audit and determines whether Fidelity is holding any unclaimed property that should be remitted to the State. Those functions are not judicial or quasi-judicial.

The case cited by Fidelity is distinguishable. In <u>Temple-Inland</u>, Kelmar conducted an audit for the Delaware Escheator under the Delaware unclaimed property law. The Delaware statute authorized the Escheator to estimate the value of the unclaimed property under certain circumstances. <u>Temple-Inland</u>, 192 F. Supp. 3d at 534 (citing Del. Code Ann. Tit. 12 § 1155). Kelmar estimated the value of the unclaimed property owed on the behalf of the Escheator. <u>Id.</u> at 541.

In this case, however, Fidelity does not allege that the Treasurer or Kelmar have authority under the Act to estimate the value of unclaimed funds in Illinois, and the Court is not aware of such authority. In addition, the <u>Temple-Inland</u> court did not address whether Kelmar acted in a quasi-judicial capacity or whether Kelmar's contingent-fee arrangement violated due process. <u>Temple-Inland</u>, 192 F. Supp. 3d at 540-43. For all these reasons, the Court finds that <u>Temple-Inland</u> is inapplicable.

Because Fidelity has not plausibly alleged that Kelmar is acting in a judicial or quasi-judicial capacity, the Court finds that Count 4 fails to state a claim.

## IV. CONCLUSION

For the reasons stated, the parties' objections to the Report and Recommendation are overruled.  The Court ACCEPTS the Report and Recommendation (d/e 31).  The Treasurer's Motion to Dismiss (d/e 18) is GRANTED IN PART and DENIED IN PART.  Counts 2, 5, 6, 7, 8, and 9 are dismissed without prejudice for lack of subject matter jurisdiction.  Counts 3 and 4 are dismissed without prejudice for failure to state a claim.  The Treasurer's motion to dismiss Count 1 is DENIED.

**ENTERED: October 31, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**